IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JENO THOMAS ZANETTI | : CIVIL ACTION |
|---|---|
| v. | : |
| | : NO. 16-379 |
| KEVIN M. GOSS, *et al.* | : |

# **ORDER-MEMORANDUM**

**AND NOW**, this 4th day of November 2016, upon consideration of Defendants' Motion to dismiss (ECF Doc. No. 8), Plaintiff's Response (ECF Doc. No. 14) and following oral argument, it is **ORDERED** Defendants' Motion (ECF Doc. No. 8) is **GRANTED in part and DENIED in part**:

1. We **grant** Defendants' Motion to dismiss Pennsylvania law claims for malicious prosecution, false imprisonment and assault and battery as Defendants enjoy sovereign immunity from these claims;

2. We **grant** Defendants' Motion to dismiss the official capacity claims against Mr. Noonan as he is no longer the Commissioner;

3. We **grant** Defendants' Motion to dismiss the supervisory liability claim against Mr. Noonan in his individual capacity with leave to file an amended complaint on or before **December 16, 2016**, if warranted under Fed. R. Civ. P. 11, based on particularized allegations of his personal involvement with notice of Trooper Goss' history with excessive force;

4. Frank Noonan is **dismissed** without prejudice, and,

5. Defendants' remaining requests for dismissal are **denied** and Mr. Goss shall answer the § 1983 claims against him no later than **November 18, 2016**.

## *Analysis*

On March 8, 2015, Pennsylvania trooper Kevin Goss and his partner pursued an all-terrain vehicle with Jeno Thomas Zanetti as a passenger.[1] After a short pursuit, the ATV either crashed into a wooded area covered with "about 10 to 12 inches of snow near the rear of a commercial building" or "into the back of a church building"; Mr. Zanetti describes both scenarios.[2] After the crash, Mr. Zanetti claims Trooper Goss forced him to the ground, handcuffed him, and struck him in the head "at least three times" with a service revolver or TASER device, causing lacerations requiring medical staples to close.[3]

The Armstrong County District Attorney charged Mr. Zanetti with disorderedly conduct and resisting arrest.[4] On January 21, 2016, the state court found "Goss did not have probable cause to attempt an arrest of Zanetti for Disorderly Conduct, and Zanetti's actions did not constitute either the crime of Disorderly Conduct or the crime of Resisting Arrest."[5]

Seven weeks later, Mr. Zanetti sued Trooper Goss and former State Police Commissioner Frank Noonan[6] in their individual and official capacities for: 1) § 1983 excessive force; 2) § 1983 false arrest & imprisonment; 3) § 1983 initiation & pursuit of prosecution without probable

---

[1] Defendant Goss contends the pursuit commenced after the ATV rolled through a stop sign in the parking lot of a convenience store.

[2] ECF Doc. No. 1 ¶ 7, 8.

[3] ECF Doc. No. 1 ¶ 8, 9.

[4] ECF Doc. No. 1 ¶ 10.

[5] *See Commonwealth v. Zanetti*, No. CP-03-CR-486-2015; ECF Doc. No. 1 ¶ 11.

[6] By March 2015, Mr. Noonan had retired as Acting Commissioner.

2

Cause; 4) state law malicious prosecution; 5) failure to train, supervise & discipline; 6) state law false imprisonment; and, 7) state law assault & battery.[7]

## *Sovereign immunity bars recovery on the state law claims.*

Defendants argue Trooper Goss, as an arm of the Commonwealth for 11th Amendment purposes, is "entitled to the protection afforded by the doctrine of sovereign immunity for the state law claims."[8] Under the Pennsylvania Constitution, Defendants argue there are only nine "specifically delineated" and "narrowly tailored" exceptions to sovereign immunity, and Mr. Zanetti's claims do not fall into those categories.[9] They argue Mr. Zanetti's state law claims of false imprisonment, malicious prosecution, and assault and battery must be dismissed.[10] Mr. Zanetti does not rebut or contest sovereign immunity in his filings but argued we should find Plaintiff should not be exempt from sovereign immunity because of an officer's intentional excessive force. We decline to legislate.

"[T]he Pennsylvania General Assembly has reaffirmed by statute the sovereign immunity of the Commonwealth and its agencies and employees.[11] "[S]overeign immunity. . .

---

[7] Mr. Zanetti seeks: "a. Declaratory judgment that the policies and practices, and the acts complained of, are illegal and unconstitutional, b. permanent injunction limiting defendant Goss' contact with the public, c. compensatory damages, d. punitive damages, e. reasonable attorney's fees and costs, f. such other and further relief as appears reasonable and just." ECF Doc No. 1.

[8] ECF Doc. No. 9.

[9] *See* 42 Pa. S.C.A. § 8522(b) (noting the nine specific exceptions to sovereign immunity); *see also Story v. Mechling*, 214 Fed. Appx. 161 (3d Cir. 2007).

[10] ECF Doc. No. 9.

[11] Pennsylvania waives sovereign immunity for conduct in nine specific instances, none of which apply here: (1) vehicle liability (2) medical-professional liability (3) care, custody or control of personal property (4) Commonwealth real estate, highways and sidewalks (5) potholes and other dangerous conditions (6) care, custody or control of animals (7) liquor store sales (8)

3

applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.'"[12] "Plaintiff's state law claims do not escape the application of sovereign immunity simply because Defendant was sued in his individual capacity."[13]

"The proper test to determine if a Commonwealth employee is protected from liability pursuant to 1 Pa. Cons.Stat. Ann. § 2310 and 42 Pa. Cons.Stat. Ann. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity."[14]

When determining if conduct is within the scope of an employee's duties, courts look to see "if [the conduct] is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer."[15] Unlike claims against individuals in municipal

---

National Guard activities, and (9) toxoids and vaccines. 42 Pa.S.C.A. § 8522(b) (2016); *Larsen v. State Employees' Ret. System*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008).

[12] *Larsen*, 553 F.Supp. 2d at 420.

[13] *Becker v. Godboldte*, No. 10-2066, 2011 WL 2015213, at *9 (M.D. Pa. May 24, 2011).

[14] *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010).

[15] *Velykis v. Shannon*, No. 06-124, 2006 WL 3098025, *at* *3 (M.D. Pa. Oct. 30, 2006); *See also Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (holding "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs

4

agencies, sovereign immunity extends to claims against employee defendants in Commonwealth agencies in their individual capacities as well.[16] Further, "[w]illful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability even for intentional torts.[17] The court in *Stone* held state trooper defendants "are entitled to summary judgment on plaintiff's state law claims, namely for assault, battery, false arrest, false imprisonment and malicious prosecution.[18]

Mr. Zanetti does not argue Trooper Goss acted outside "the scope of his duties." Mr. Zanetti pleads Trooper Goss initiated a traffic stop after a short police pursuit. Mr. Zanetti does not allege Trooper Goss acted, for example, off duty, but pleads he was "on patrol."[19]

When Trooper Goss attempted to take Mr. Zanetti into custody, he allegedly used force for the purpose of serving his employer (the state police), which would not be unexpected given the nature of his duties. Trooper Goss took Mr. Zanetti into custody after a police pursuit. In

---

substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...").

[16] *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) ("[s]overeign immunity applies to claims asserted against Commonwealth officials in their individual capacities. Unlike employees of municipal agencies who remain liable for intentional torts, employees of Commonwealth agencies are immune from liability even for intentional torts"); *Shoop v. Dauphin County*, 766 F. Supp. 1327, 1334 (M.D. Pa. 1991), *aff'd*, 945 F.2d 396 (3d Cir. 1991) ("[a]ccording to the clear language of the statute, not only the Commonwealth but also its employees and officials are entitled to immunity").

[17] *Stone v. Felsman*, No 10-442, 2011 WL 5320738, at *11 (M.D. Pa. Nov. 1, 2011).

[18] *Id.*

[19] ECF Doc. No. 1 ¶ 6.

5

attempting to gain control and place Mr. Zanetti under arrest, he allegedly struck Mr. Zanetti with an either his service weapon or TASER device. For this conduct to be outside the scope of his duties, it must be found to be "outrageous."[20] Even when the employer forbids an action, it still may be found to within the scope of employment if done with the purpose of serving the master.[21]

A reasonable amount of force may be required by a state trooper when attempting to take a suspect into custody: ". . . physical force may attend such an arrest. That is the nature of the job. However, use of reasonable force to affect a lawful arrest does not strip away from the officers the immunity that they enjoy as agents of the Commonwealth, when performing the Commonwealth's work."[22]

As alleged, Trooper Goss acted within the scope of his employment, his actions were not "outrageous," nor do they fall within the nine exceptions to sovereign immunity. Although the state court ultimately dismissed the state law charges against Mr. Zanetti, the favorable termination does not impact the sovereign immunity analysis, as sovereign immunity applies regardless of state law claims terminating in favor of defendants.[23]

---

[20] *Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 399 (W.D. Pa. 2014) ("[t]o go beyond the scope of employment, however, an individual engaging in conduct that is otherwise incidental to the performance of work-related duties must act with a high degree of outrageousness").

[21] *Brumfield*, 232 F.3d *at* 381 ("[u]nder Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business'").

[22] *Kircher v. Pennsylvania State Police Dept.*, No. 13-02143, 2016 WL 4379143, at *28 (M.D. Pa. Aug. 17, 2016).

[23] *Stone*, 2011 WL 5320738 at *2.

6

### *Mr. Goss has not sufficiently plead supervisory liability for Mr. Noonan.*

Mr. Zanetti seeks to sue Mr. Noonan through a conclusory allegation: "…Noonan, as the policy maker for the [Pennsylvania State Police] and the supervisor of the Troopers employed by the [Pennsylvania State Police], had knowledge of a number of events and occurrences which involved the violations of the Constitutional rights of citizens by Defendant, Goss, prior to the alleged herein and that he failed to make adequate inquiry or investigation into them or in any way appropriately discipline [sic] Goss for his prior violations of the Constitutional rights of citizens."[24]

Mr. Noonan argues the Mr. Zanetti failed to plead Mr. Noonan "[was] personally involved or had actual knowledge of or acquiesced to the commission of the wrongdoing."[25] Mr. Noonan argues our Court of Appeals in *Colburn v. Upper Darby Tp.*,[26] allowed supervisory liability when the official "(1) had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate."[27] Mr. Noonan argues he cannot be liable as supervisor because he retired by the time of the March 2015 incident.[28] Mr. Noonan also argues, even assuming *arguendo* we found he somehow continued as Commissioner, he still lacked personal knowledge

---

[24] ECF Doc No. 1 ¶ 37.

[25] *Rizzo v. Goode*, 423 U.S. 362 (1976).

[26] 838 F.2d 663 (3d Cir. 1988).

[27] ECF Doc. No. 9.

[28] *Id.*

7

of the incident and could not have communicated any form of approval to Trooper Goss. As a result, Mr. Noonan cannot be found liable for any of Trooper Goss's alleged actions, citing *Zabresky v. Von Schmeling.*[29]

Mr. Zanetti counters Mr. Noonan acted as Commissioner at the time of the incident *and* had personal knowledge of the alleged conduct because Mr. Noonan is currently a codefendant in an unrelated §1983 excessive force lawsuit with Trooper Goss.[30] Mr. Zanetti argues the allegations in *Gracey* are based on substantially similar circumstances.[31] Mr. Zanetti argues being a codefendant with Trooper Goss in an earlier-filed excessive force lawsuit (in which Trooper Goss is again accused of excessive force and related claims) evidences Mr. Noonan had personal knowledge before Trooper Goss's improper conduct as to Mr. Zanetti. As we explored at oral argument, he fails to allege any of these facts and we have no basis to infer those facts.

### We find no basis for official capacity claims.

We dismiss the claims against Mr. Noonan in his official capacity on sovereign immunity grounds. In *Lavia v. Pennsylvania, Dept. of Corrections*,[32] the court dismissed a claim against the Pennsylvania Department of Corrections "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth . . . it

---

[29] No. 12-20, 2013 WL 315718 at *7 (M.D. Pa. Jan. 28, 2013)(collecting cases supporting same conclusion).

[30] *See Gracey v. Goss, et al*, No. 1:2015-cv-68 (M.D.Pa.).

[31] ECF Doc. 15.

[32] 224 F.3d 190 (3d Cir. 2000).

8

shares in the Commonwealth's Eleventh Amendment immunity." A claim against Mr. Noonan in his official capacity is a claim against the Pennsylvania State Police; a department of the Commonwealth much like the Department of Corrections.[33] These claims are barred by the 11th Amendment: "a suit against state officials in their official capacity [is barred] because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.[34]

**Mr. Zanetti does not plead facts allowing personal capacity claims.**

Claims against Mr. Noonan in his personal capacity are not entitled to sovereign immunity.[35] Even so, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.[36] "[P]ersonal involvement can be shown through allegations of personal direction or of

---

[33] *Luck v. Mt. Airy No. 1, LLC*, 901 F. Supp. 2d 547, 558 (M.D. Pa. 2012) ("[w]e will grant defendants' motion and dismiss all claims against the Pennsylvania State Police. As a suit against defendants acting in their official capacities is the same as one asserted against the agency, the claims against Defendants. . .in their official capacities will also be dismissed.").

[34] *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).

[35] *Id.* We are aware Pennsylvania State Police supervisors have obtained sovereign immunity for a failure to train claim: "[b]ecause Defendant Supervisors were acting within the scope of their employment while training and supervising the Defendant Troopers and there is no genuine issue of material fact as to how they carried out their duties, sovereign immunity would extend to them." *Mohammed v. John Doe Pennsylvania State Police Sup'rs*, No. 11–5004, 2013 WL 5741788, at *11 (E.D.Pa.2013).

[36] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Neuburger v. Thompson*, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004), aff'd, 124 Fed. Appx. 703 (3d Cir. 2005) ("a supervisor's mere failure to train, supervise or discipline subordinate officers does not state a basis for a § 1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful conduct"); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990) (". . . in the context of police action, an official's mere—and even callous—inaction in the face of subordinate officers' unconstitutional actions clearly does not suffice to render the official liable for those actions.").

9

actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[37]

In *Barber v. Pennsylvania State Police*,[38] the court denied a motion to dismiss a claim against the Pennsylvania State Police commissioner for failure to supervise or to train. Barber sued the Pennsylvania State Police, various troopers and Commissioner Miller, alleging excessive force and failure to train and supervise. While holding the claims must be dismissed against defendants in their official capacities, the court allowed the supervisory claims against Commissioner Miller in his personal capacity to proceed into discovery.[39] The court held "[a]ccepting as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and viewing them in the light most favorable to the Plaintiff, Plaintiff has alleged that, prior to the facts at bar, other troopers of the PSP on numerous occasions used excessive force that resulted in numerous legal claims being filed against it."[40] "[T]hese other legal claims should have placed Miller on notice of the alleged problem regarding the use of excessive force within the PSP and alerted him to the need for more training and/or supervision to correct the alleged problems . . . Miller's alleged failure to respond with more supervision or additional training could have been construed by Troopers at PSP . . . as acquiescence in the alleged excessive force practices allegedly employed by PSP Troopers."[41]

---

[37] *Id.*

[38] No. 06-1713, 2007 WL 2071896 (W.D.Pa.2007).

[39] *Id.* at *3.

[40] *Id. at* *4.

[41] *Id.*

10

We have no similar allegation to review. Mr. Zanetti argues, but does not plead under Rule 11, Mr. Noonan is currently a codefendant with Trooper Goss in an unrelated § 1983 excessive force claim in *Gracey*. The events leading to the *Gracey* action occurred before this case, as in *Barber*.[42] Mr. Zanetti argues Mr. Noonan "had actual knowledge" of Trooper Goss's conduct. *Colburn* arguably applies to Mr. Noonan as well, given "knowledge of a prior pattern of similar incidents" is present here, as evidenced by the previous lawsuit filed against Mr. Noonan and Trooper Goss.[43]

But, unlike those plaintiffs, Mr. Zanetti does not specifically allege Mr. Noonan is knowledgeable, including citations or admissions in *Gracey* showing Mr. Noonan knew facts in in *Gracey*. He must do so before we can proceed because "[p]ersonal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action."[44]

Mr. Zanetti argues we can look outside the pleadings, and specifically to *Gracey*, to determine if Mr. Noonan had knowledge of Trooper Goss's earlier excessive force conduct, citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*[45] The court in *Pension* held "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to

---

[42] In *Gracey*, plaintiff alleges Trooper Goss used excessive force after terminating pursuit. The plaintiff also sued Mr. Noonan for supervisory liability.

[43] Supervisory liability can only be imposed when the official "(1) had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." *Colburn*, 838 F.2d *at* 663.

[44] *Hernandez v. Kiak*, NO. 14-2317, 2016 WL 5796895, at *7 (M.D. Pa. Sept. 30, 2016); *see also Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989) (discussing supervisory liability standard).

[45] 998 F.2d 1192 (3d Cir. 1993).

11

a motion to dismiss if the plaintiff's claims are based on the document."[46] Further, "[c]ourts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials. . ."[47] Mr. Zanetti has not attached any such document, and the "public record" he references in briefing and oral argument from *Gracey* falls outside the scope of acceptable material. We do not look to allegations in an ongoing court proceeding as a public record on the present standard of review when Mr. Zanetti does not plead these facts under Fed.R.Civ.P. 11.

We require particularized allegations Mr. Noonan knew about Trooper Goss's excessive force problems before March 8, 2011, whether he learned about these alleged problems from the *Gracey* allegations or from other sources.[48] Absent Mr. Zanetti's pleading of this personal knowledge or acquiescence, the supervisory liability claim against Mr. Noonan in a personal capacity is dismissed.

*[signature]*

**KEARNEY, J.**

---

[46] *Id.* at 1196.

[47] *Id.* at 1197.

12